# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21-cr-789 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| BRAD LADD, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On May 11, 2023, defendant Brad Ladd ("Ladd") was sentenced to a custody term of 84 months, following his guilty plea to conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(4). (Doc. No. 39 (Judgment); *see* Minutes of Proceedings [non-document], 5/11/2023; Doc. No. 34 (Plea Agreement); *see also* Doc. No. 14 (Indictment).) Now before the Court is Ladd's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines. (Doc. Nos. 41, 48 (Motion); *see* Doc. No. 49 (Exhibit).) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 54 (Response)), and Ladd filed a reply. (Doc. No. 55 (Reply).)

The Court employs a two-step approach to deciding whether to reduce a sentence based on a retroactive amendment to the federal sentencing guidelines. First, the Court must consider the scope of the reduction authorized by the amendment, and then it must consider whether such a

reduction is warranted based on the factors set forth in 18 U.S.C. § 3353(a). *Dillon v. United States*, 560 U.S. 817, 826, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010) (citing § 3582(c)(2)).

Ladd moves for a reduction in the term of imprisonment imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(o). Specifically, he argues that he is eligible for a reduced sentence under Amendment 821, Part A, which affected the sentencing guidelines' treatment of offenses committed while under a criminal justice sentence. (*See* Doc. No. 48, at 1.[1]) Part A of Amendment 821, which now appears in the guidelines at § 4A1.1(e), limits the criminal history impact of "status points," decreasing them by 1 point for individuals with 7 or more criminal history points and eliminating status points for those with 6 or fewer criminal history points. *See* U.S.S.G. § 4A1.1(e). The Amendment was given retroactive effect, provided that any order reducing a term of imprisonment based on retroactive application of Amendment 821 have an effective date of February 1, 2024, or later. *See* § 1B1.10(e)(2) (Nov. 1, 2023).

Prior to sentencing, the Court ordered the preparation of a Presentence Investigation Report ("PSR"). (*See* Doc. No. 37 (Final PSR).) According to the PSR, the base offense level was 36. (*See id.* at 5 ¶ 19.) After a 3-level reduction for acceptance of responsibility, the resulting total offense level was 33. (*See id.* at 6 ¶¶ 26–28.) Ladd had prior convictions for burglary, kidnapping, felonious assault, domestic violence, receiving stolen property, assault, and disorderly conduct that collectively scored 11 criminal history points. (*See id.* at 8–10 ¶¶ 33–39.) Two more points were added because Ladd was under a criminal justice sentence at the time of the instant offense. (*See*

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

*id*. at 10 ¶ 40.) With a total of 13 criminal history points, the guidelines dictated that he was a criminal history category VI. (*See id*. at 10 ¶ 41.) After further agreed upon reductions, the advisory guideline range was 151–188 months, based upon an offense level of 29 and a criminal history category of VI. (*See id*. at 15 ¶ 75.)

The parties, however, executed a binding Rule 11(c)(1)(C) agreement in which the parties agreed to a sentence based on a guideline calculation that varied substantially from the PSR. Lab reports confirmed that the methamphetamine in the case had a 100% substance purity, and the PSR's calculation of the offense level was premised on the purity of the drugs. Nevertheless, the parties contemplated a lower total offense level of 25. With an offense level of 25, and a criminal history category of VI, the guideline range was 110–137 months. (*See id*. at 15 ¶ 76; *see also* Doc. No. 34 at 4–5 ¶¶ 14–15; Doc. No. 44 (Transcript from Sentencing Hearing), at 4.) Notwithstanding the significant discrepancy between the proper guideline calculation and the parties' calculation, the Court accepted the parties Rule 11(c)(1)(C) negotiated sentence. In doing so, the Court had to apply an additional 3-level downward variance to arrive at a total offense level of 22, with a corresponding guideline range of 84 to 105 months. (This resulting range was 7 levels lower than the range as properly calculated in the PSR.) Consistent with the parties' binding Rule 11(c)(1)(C) agreement, the Court imposed the negotiated sentence of 84 months. (Doc. No. 39; *see* Doc. No. 34, at 4 ¶ 12; Doc. No. 44, at 10–11.)

In his motion, Ladd requests that the Court reduce his sentence, based on the amended guideline range applicable following the changes made to "status points" under Part A of Amendment 821. (Doc. No. 48, at 1.) Under the Amendment, because Ladd had 7 or more criminal history points, his "status points" would be reduced by 1, resulting in a total criminal history score

3

of 12, which correlates to a criminal history category V. With a total offense level of 25 and a criminal history category of V, his amended sentencing guideline range is 100 to 125 months. Even though Ladd's 84-month Rule 11(c)(1)(C) sentence is 2 levels below the amended advisory guideline range (and 6 levels lower if the proper offense level calculations from the PSR are considered), Ladd requests that the Court apply the 26-month downward variance applied at sentencing to arrive at a new sentence of 74 months. (*Id.* at 3.) In support, he relies on the programming he has completed in prison, his clean disciplinary record, his release plan, and his desire to assist in the care of his in-laws. (*Id.* at 3–4; *see* Doc. No. 48-1 (Letters); Doc. No. 49 (Prison Records).)

The government implicitly concedes that Ladd is eligible for a sentence reduction under Part A, but it urges the Court to exercise its discretion in denying Ladd's motion (Doc. No. 54, at 1, 3.) The government argues that " [w]hile [Ladd] contends that he is eligible under Part A of Amendment 821, the purposes and principles of sentencing under 18 U.S.C. § 3553(a) counsel against granting a sentencing reduction." (*Id.* at 3.)

The Court agrees with the parties that Ladd is eligible for consideration of a sentence reduction under Part A. *See* U.S.S.G. § 1B1.10. Having concluded the amended guidelines range would have been applicable to Ladd had the Amendment been in effect at the time of sentencing, the Court proceeds to the second step of the analysis and considers whether such a reduction is warranted based on the factors set forth in § 3553(a). *Dillon*, 560 U.S. at 826 (citing § 3582(c)(2)).

Subject to the limits set forth in U.S.S.G. § 1B1.10(b), a court may consider all pertinent information in applying the § 3553(a) factors and determining whether and by how much to reduce a defendant's sentence. *Dillon*, 560 U.S. at 821–22; *see United States v. Sherwood*, 986 F.3d 951,

954 (6th Cir. 2021) (citing 18 U.S.C. § 3553(a) and directing district courts to consider all relevant statutory sentencing factors). Section 3553(a), in addition to requiring consideration of the applicable guidelines and policy statements of the Sentencing Commission, requires the sentencing judge to consider the nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from future crimes of the defendant; and (4) to provide the defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner; and (5) the kinds of sentences available. *See* 18 U.S.C. § 3553(a).

Application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment[.]" U.S.S.G. § 1B1.10 app. n. 1(B)(ii). Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment[.]" *Id*. app. n. 1(B)(iii).

The instant drug conspiracy, in which Ladd held a leadership role, was serious and dangerous and continues to warrant a significant sentence. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense, that, in itself, poses a danger to the community." (citations omitted)). Ladd also has an "extensive criminal history[,]" which the Court observed at sentencing "reflects a history of violence." (Doc. No. 44, at 7, 9.) That history began in 2008—when he was 19 years old—and includes convictions for aggravated robbery with a firearm specification, disorderly conduct, burglary, kidnapping, felonious assault,

5

domestic violence, receiving stolen property, and assault. (*Id.* at 9; *see* Doc. No. 37, at 8–9 ¶¶ 33–38.) Additionally, the record reflects that many of these prior crimes were committed while Ladd was on post-release control. (*See* Doc. No. 37, at 8–9 ¶¶ 33–34.) The fact that Ladd committed this and prior offenses while on probation suggests that he is a poor candidate for early release, even with conditions.[2] (*See id.* at 10 ¶ 40.)

The Court has taken into consideration Ladd's prison programming, his incident-free behavior at his institution, his release plan, and his family circumstances. But after consideration of all of the § 3553(a) sentencing factors, the Court finds that Ladd's original sentence, which falls below the amended advisory guideline range, remains appropriate and necessary to protect the public from Ladd's dangerous activities. Additionally, for the same reasons, the Court finds a reduction of his sentence would undermine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence. For these reasons, alone, the motion is denied.

More fundamentally, however, the present motion fails because it ignores the effect of the binding plea agreement. A defendant who enters into a binding plea agreement remains eligible for retroactive relief under § 3582(c)(2) provided that the guidelines range was "part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Hughes v. United States*, 584 U.S. 675, 685, 138 S. Ct. 1765, 201 L. Ed. 2d 72 (2018). Nevertheless, "[t]he district court can consider the benefits the defendant gained by entering a

---

[2] At sentencing, the Court expressed concern that Ladd's criminal history warranted a criminal history category of VI. The Court observed that Ladd "seems to only be able to refrain for a couple of years after he is released from custody or supervision before he commits his next often serious offense. He's been afforded many opportunities to change his behavior, but it appears that he is either unwilling or incapable of doing so." (Doc. No. 44, at 9–10.)

Type-C agreement when it decides whether a reduction is appropriate." *Id.* at 689. There is no question that Ladd received a substantial benefit from the Rule 11(c)(1)(C) agreement that a reduced sentence would undermine.

By agreement of the parties, the quantity of methamphetamine used to calculate the sentence was based on a mixture and substance containing a detectable amount of methamphetamine, rather than pure crystal methamphetamine, which was supported by the lab test results. In the end, after all agreed-upon adjustments, this significantly lowered Ladd's guidelines range from 151–188 months to 110–137 months with a criminal history category of VI. Even then, the Court was required to vary downward considerably to arrive at the parties' agreed sentence of 84 months. The effect the Rule 11(c)(1)(C) agreement had on the calculation of Ladd's sentence was so dramatic that the Court only accepted the agreement "[w]ith extreme reluctance[.]" (Doc. No. 44, at 10.) Further, "in order for the sentence to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense and protect the public from further crimes of Mr. Ladd," the Court determined that analysis of the sentencing factors "require[d] that Mr. Ladd be supervised for a lengthy period of time to make sure that he remains crime free." (*Id.*)

Under the amended calculations, which result in a criminal history category of V, Ladd's 84-month custody sentence is still below the new advisory guideline calculation of 100–125 months using the base offense level agreed to by the parties.[3]

In the final analysis, the parties' agreement created an expectation that Ladd would serve the time of his stipulated sentence instead of risk the much higher sentence he would have likely received had the Court considered the purity of the drugs in question and not varied substantially

---

[3] If the base offense level of the PSR were applied, then the new advisory guideline range would be 140−175 months.

7

downward. Even if Ladd would have been scored as a criminal history category V at the time of sentencing, the Court would have still accepted the Rule 11(c)(1)(C) agreement and imposed the binding 84-month custody term. Thus, to reduce Ladd's sentence further based on a guidelines amendment that would have had no appreciable effect on his sentence would result in an unjustified windfall for defendant that would defeat the purposes of sentencing. *See Hughes*, 584 U.S. at 690 ("If the district court concludes that it would have imposed the same sentence even if the defendant had been subject to the lower range, then the court retains discretion to deny relief."); *see, e.g., United States v. Moya*, No. 09-cr-761, 2021 WL 2073452, at *3 (D. N.M. May 24, 2021) (denying motion to reduce sentence under the First Step Act of 2018, finding that a sentence reduction would "be a windfall, especially considering the binding nature of a Rule 11(c)(1)(C) plea agreement").

For the foregoing reasons, defendant's motion to reduce his sentence (Doc. Nos. 41, 48) is DENIED.

**IT IS SO ORDERED**.

Dated: May 10, 2024

                                                  **HONORABLE SARA LIOI**
                                                  **CHIEF JUDGE**
                                                  **UNITED STATES DISTRICT COURT**